**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| DAVID HOWELL<br>aka ANDRE GILLIAM,<br><br>Plaintiff<br><br>v.<br><br>SHERIFF CHUCK ALLEN, et al.,<br><br>Defendants | Case No.: 3:17-cv-00449-MMD-WGC<br><br>**Report & Recommendation of<br>United States Magistrate Judge**<br><br>Re: ECF No. 57 |

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is the Motion for Summary Judgment filed by defendants Sean Smith and Heather Hagan. (ECF Nos. 57, 57-1 to 57-5.) Plaintiff filed a response. (ECF No. 79.) Smith and Hagan filed a reply. (ECF No. 80.) The court will address the motion for summary judgment filed by Sheriff Chuck Allen (ECF No. 63) in a separate report and recommendation.

After a thorough review, it is recommended that the motion filed by Smith and Hagan be granted.

**I. BACKGROUND**

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (Compl., ECF No. 13.) The events giving rise to this action took place on June 22, 2017, while Plaintiff was housed at the Washoe County Detention Center (WCDC). (*Id.*) Defendants are Sheriff Chuck Allen and Deputies Sean Smith and Heather Hagan. (*See* ECF Nos. 13, 25, 29.)

Plaintiff alleges that while housed at WCDC on June 22, 2017, he was exposed to toxic gases and fumes. He contends that Sheriff Allen knew of the fumes from construction of the roof of the unit where Plaintiff was housed, but failed to take measures to ensure the fumes would not affect inmates. Plaintiff further alleges that after Smith and Hagan became aware of the fumes, they released about 30 similarly situated inmates to give them fresh air to breathe, but admitted that they kept Plaintiff in his cell rather than release him because he was sleeping. He avers that he became ill as a result of exposure to the fumes and had to be sent to the infirmary in a wheelchair. He was prescribed medication that he had to take twice a day for six or seven days.

On screening Plaintiff was allowed to proceed with the following claims: (1) an Eighth Amendment deliberate indifference to safety claim against Sheriff Allen in Count I based on allegations he knew of the roof construction and toxic fumes, but took no steps to protect the inmates, including Plaintiff, from the fumes; (2) a Fourteenth Amendment Equal Protection Clause claim in Count II against Smith and Hagan based on allegations they left Plaintiff in a cell that was heavy with toxic fumes while they released other similarly situated inmates because Plaintiff was asleep and Plaintiff was sickened by the fumes which required treatment from the infirmary; (3) an Eighth Amendment deliberate indifference to safety claim against Smith and Hagan in Count V based on the same facts. (ECF No. 12.)

Defendants Smith and Hagan move for summary judgment and argue that they did not violate Plaintiff's rights.

## II. LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). In considering a motion for summary

judgment, all reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

In evaluating whether or not summary judgment is appropriate, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine dispute as to a material fact; and (3) considering the evidence in light of the appropriate standard of proof. *See Anderson*, 477 U.S. at 248-50. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id*. at 248.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party cannot establish an element essential to that party's case on which that party will have the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Id*. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

At summary judgment, the court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine dispute of material fact for trial. *See Anderson*, 477 U.S. at 249. While the evidence of the nonmoving party is "to be believed, and all justifiable inferences are to be drawn in its favor," if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id*. at 249-50 (citations omitted).

### III. DISCUSSION

**A. Facts**

**1. Smith's and Hagan's Version of Events**

Smith and Hagan rely in large part on Plaintiff's deposition transcript (ECF No. 57-1) and their interrogatory responses (ECF Nos. 57-2, 57-3) in presenting their statement of facts.

According to Smith and Hagan, Plaintiff was received at the WCDC for a parole violation and a new arrest for burglary and grand larceny. (ECF No. 57-1, Pl. Depo. Trans., at 8-9, 40.) Prior to this, Plaintiff admits he had been using heroin and marijuana daily. (*Id*. at 9.) When he was placed in custody he began detoxing from heroin. (*Id*.) He refused treatment for his heroin withdrawal. (*Id*. at 30-31.)

On June 22, 2017, he was housed in Unit 6. ( *Id.* at 36.) He did not have a cellmate, and does not know how many inmates were housed in the unit. (*Id*.) He was housed in administrative segregation for his protection. (*Id*. at 43, 45.) That day, he woke up around 5 or 6 a.m., after falling asleep around 9 p.m. the night before. (*Id*. at 11.) He ate his breakfast, and went to sleep shortly after breakfast. (*Id.* at 12.) He admits he was sleeping most of the morning. (*Id.* at 12-14.) He woke up in the afternoon for about five minutes to use the bathroom. (*Id.* at 14-15.) He then slept most of the afternoon. (*Id*. at 15-16.) He woke up shortly before dinner, which was served between 4 and 5 p.m. (*Id.* at 16.) He had dinner in his cell because he was in administrative segregation. (*Id.*  at 16, 25.) His meal was provided by an inmate porter through his food slot. (*Id.* at 25-26.) After dinner, he threw up, and then began to try to figure out what was going on with how he was feeling. (*Id.* at 16.) He laid in bed and tried to get up a few times, but his knees buckled. (*Id.* at 17.)

5

After that, he pushed his emergency call button for medical attention somewhere between 6 and 8 p.m., but later testified he thinks that it was around 8 p.m. (*Id.* at 17, 18.) An officer answered his call. (*Id.* at 19-20.) He did not know who the officer was that responded to his emergency call, but it was not defendant Smith. (*Id.* at 20, 21.)

Between 8:00 and 10:00, defendant Smith, the unit officer, and a nurse came to his cell. (*Id.* at 20-22.) He believes this is the first time he saw Smith that day. (*Id.* at 22.) Hagan was not there when he was taken to the infirmary, and Howell does not remember speaking (or not speaking) with Hagan that entire day. (*Id.* at 21, 22, 23.)

Plaintiff arrived at the infirmary between 10:30 and 11:30 p.m., and does not remember the name of the female nurse who treated him. (*Id.* at 23.) He testified that he could not stand up or walk, his stomach hurt, his back hurt, his eyes were burning, he was nauseous and had thrown up numerous times, was fatigued and dehydrated. (*Id.* at 24.) The nurse took his vitals and temperature. (*Id.*) She prescribed him medication but he does not recall what it was, though he testified it was no more than aspirin or something like that. (*Id.* at 24-25.) He was ordered to receive his medication for several days. (*Id.* at 25.) The medication prescribed was Tylenol. (ECF No. 57-5 at 14.) Howell left the infirmary and returned to his cell. (*Id.* at 28.) He does not think he saw any other inmates from his unit while at the infirmary. (*Id.* at 51.) The nurse never told him what she thought caused his symptoms and did not provide a diagnosis. (*Id.* at 52.)

Smith believes that Hagan took Plaintiff to the infirmary. (ECF No. 57-2 at 5, Smith Response to Interrogatory No. 8.)

Neither Hagan nor Smith got sick from the odor in the unit. (ECF No. 57-2 at 3-4, Smith Response to Interrogatory No. 5.) No other inmate filed a grievance or other complaint related to

fumes or gases from roofing work on Unit 6, and no other inmates requested to go or went to the infirmary in association with fumes or gas. (Beard Decl., ECF No. 57-4 ¶ 7.)[1]

Plaintiff testified he did not know what Smith and Hagan were doing the day he got sick, and did not know what other inmates in his cell were doing most of the day. (*Id.* at 36.) Before and after dinner, he communicated with the inmates and they told him what happened in the unit that day. (*Id.* at 26-27.)

On June 22, 2017, Smith and Hagan were the only two deputies assigned to work in Unit 6 during the 7 a.m. to 7 p.m. shift. (ECF No. 57-2 at 2-3, Smith response to Interrogatory Nos. 1-2; ECF No. 57-3 at 2-3, Hagan response to Interrogatory Nos. 1-2.) Smith remembers an odor on June 22, 2017, in the entire detention facility, from some construction work being done at the facility. (ECF No. 57-2 at 3, Smith response to Interrogatory Nos. 3, 4.) Hagan also detected or became aware of an odor inside the unit from construction being done at the facility (ECF No. 57-3, Hagan response to Interrogatory Nos. 3, 6.)

Because of the odor, to help the inmates, Deputy Smith or Deputy Hagan called the supervising sergeant a little after noon and asked that they be allowed to let the inmates sit outside of their cells where they figured there would be more air circulation to make the inmates more comfortable. (ECF No. 57-2 at 3-4, Smith response to Interrogatory No. 5; ECF No. 57-3 at 4, response to Interrogatory No. 6.) Some inmates accepted the offer, and some did not. For those that did not, the inmates said the odor did not affect them or was not bad. Neither Hagan nor Smith, who were in Unit 6 with the inmates, felt sick from the odor. (*Id.*)

---

[1] Lieutenant Blaine Beard works in the Washoe County Sheriff's Office Detention Division, but on June 22, 2017, he was a sergeant with the Washoe County Sheriff's Office, and responded to Plaintiff's grievance about the fumes.

1    Neither Smith nor Hagan recall whether Plaintiff was let out of his cell as the unit housed
2 between 80 and 100 inmates, but contend that if he asked for assistance it would have been
3 provided. (ECF No. 57-2, Smith Response to Interrogatory No. 6; ECF No. 57-3 at 4-5, Hagan
4 response to Interrogatory No. 8.) Smith does not recall telling Plaintiff that he was not released
5 from his cell because he was sleeping. (ECF No. 57-2 at 6, Smith response to Interrogatory
6 No. 12.)
7    Plaintiff was received at NDOC on June 30, 2017. (ECF No. 57-1, Pl. Depo. Trans., at
8 42.) He was evaluated by prison medical staff, and did not receive any treatment because he
9 refused. (*Id*.)

10   **2. Plaintiff's Version of Events**

11   Plaintiff contends that he was housed in Unit 6 at the WCDC on June 22, 2017. He
12 claims that in the early morning hours, Smith and Hagan—the two deputies assigned to the
13 unit—detected a toxic fume/odor inside Unit 6 from materials utilized for construction work on
14 the roof of Unit 6, that permeated the entire facility. He points to Defendants' statements that one
15 of them contacted their supervisor for the purpose of requesting authorization to remove inmates
16 in the unit from their cells to relieve them from the fumes. They proceeded to remove all of the
17 inmates similarly situated to Plaintiff from their cells, but did not remove Plaintiff because he
18 was sleeping. He says that alternatively, they required Plaintiff to ask to be removed, but he
19 could not because he was sleeping.

20   Plaintiff claims that as a result of the exposure to the fumes, he could not walk, could not
21 stand up, his stomach hurt, his head and back hurt, his eyes were burning, he was nauseous and
22 vomited several times, he was also fatigued and dehydrated.

23

Plaintiff was examined by a nurse in his cell, and she instructed the deputies present—one of whom was Smith—to take him to the infirmary via wheelchair because he could not walk. He maintains that he asked Smith why he was not let out of his cell for relief like the other inmates, and Smith responded by saying: "because you were asleep." At the infirmary, he complained of nausea and dizziness, low back pain and aches. He saw a nurse who evaluated him and told him that he needed to be examined by a doctor and she would schedule him for an appointment. She prescribed him aspirin/Tylenol because she could not prescribe more than that before he was examined by a doctor. He was never seen by a doctor at WCDC regarding the fumes. He states that he did not have these ailments prior to being exposed to the fumes.

Plaintiff maintains that he did not refuse treatment at NDOC related to the ailments he suffered as a result of exposure to the fumes, but refused treatment with respect to other ailments from which he previously suffered for unrelated reasons.

**B. Deliberate Indifference to Health and Safety**

**1. Legal Standard**

Plaintiff alleges that Smith and Hagan violated his rights when they left Plaintiff in a cell that was heavy with toxic fumes while they released other similarly situated inmates because Plaintiff was asleep.

The court will first address the correct legal standard applicable to this claim. Plaintiff is currently incarcerated within NDOC, but on June 22, 2017, he was in the custody of the WCDC. (ECF No. 13 at 1.) On screening, the court stated in a footnote that Plaintiff was likely not a pretrial detainee during the relevant time at WCDC, but at WCDC while still in the custody of NDOC. (ECF No. 12 at 1 n. 1.) In addition, Plaintiff's deliberate indifference to safety claims were alleged under the Eighth Amendment. As such, the court analyzed Plaintiff's claims under

the Eighth Amendment for convicted prisoners which utilizes the deliberate indifference standard that applies both an objective and subjective component to analyzing the claim. (ECF No. 12.) Up until this motion for summary judgment was filed, neither Plaintiff nor Defendants had filed anything with the court to correct the court's characterization of Plaintiff in the screening order as a convicted prisoner on June 22, 2017, and not a pretrial detainee.

Defendants' motion provides Plaintiff's deposition testimony where he confirms that he arrived at WCDC on May 23, 2017, for a parole violation and a new arrest for burglary and grand larceny. It is an interesting question of what standard applies to a person who is housed in a jail for a parole violation, before the violation is adjudicated; however, the court need not decide that issue because Plaintiff was also at the WCDC on a new arrest for which he had not yet been tried so presumably he would be considered a pretrial detainee at that time.

Defendants' motion presents evidence that Plaintiff was a pretrial detainee, and then proceeds to apply the Eighth Amendment deliberate indifference standard. The court does not fault Defendants for utilizing that standard, since that was applied both by Plaintiff in his complaint, and by the court in the screening order. With this new evidence that Plaintiff was a pretrial detainee, however, the court must consider what legal standard applies to a pretrial detainee's claim for deliberate indifference to his safety.

"Inmates who sue prison officials for injuries suffered while in custody may do so under the Eighth Amendments Cruel and Unusual Punishment Clause or, if not yet convicted, under the Fourth Amendment's Due Process Clause." *Castro v. County of Los Angeles*, 833 F.3d 1060, 1067-68 (9th Cir. 2016) (en banc), *cert. denied,* 137 S.Ct. 831 (Jan. 23, 2017) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979) (holding that, under the Due Process Clause, a detainee may not be punished prior to conviction)).

The Eighth Amendment standard for deliberate indifference for convicted prisoners requires an objective and subjective showing. *Id*. First, the risk posed to the prisoner must be, objectively speaking, sufficiently serious. *Farmer v. Brennan*, 511 U.S. 825, 834 (citation omitted). Second, the prison official must subjectively "know of and disregard an excessive risk to inmate health or safety." *Id*. at 837. "In other words, the official must demonstrate a *subjective awareness* of the risk of harm." *Castro*, 833 F.3d at 1068 (internal citation and quotation marks omitted) (emphasis original).

The Ninth Circuit previously applied the Eighth Amendment's deliberate indifference standard to claims brought by pretrial detainees under the Fourteenth Amendment. *See id*. In *Kingsley v. Hendrickson*, 135 S.Ct. 2466 (2015), the Supreme Court held that the standard for an excessive force claim, analyzed under the Eighth Amendment for convicted prisoners, is governed by an objective inquiry for pretrial detainees.

In *Castro*, the Ninth Circuit held that a failure to protect claim, which is also analyzed under the Eighth Amendment for convicted prisoners, involves an objective inquiry when brought by a pretrial detainee. Then, in *Gordon v. County of Orange*, the Ninth Circuit concluded that "claims for violations of the right to adequate medical care" that are governed by the Eighth Amendment deliberate indifference standard when brought by a convicted prisoner, "must be evaluated under an objective deliberate indifference standard" under the Fourteenth Amendment when brought by a pretrial detainee. 888 F.3d 1118-1125 (9th Cir. 2018.)

Most recently, in *Oliver v. Baca*, the Ninth Circuit confirmed that a conditions of confinement claim that would be analyzed under the Eighth Amendment when asserted by a convicted prisoner is governed by the Fourteenth Amendment when asserted by a pretrial detainee. 913 F.3d 852, 857-58 (9th Cir. 2019) (pretrial detainee's claim that his rights were

violated when he was not provided a bed for three-and-a-half days at the jail had "a right against jail conditions or restrictions that amounted to punishment"; the court nevertheless relied on considerations espoused in Eighth Amendment cases involving convicted prisoners regarding temporarily restricting rights in the context of disturbances and lockdowns) (citation omitted).

The Ninth Circuit has not specifically addressed what standard applies in a case involving a claim for deliberate indifference to health or safety when brought by a pretrial detainee, but given the rulings of the Supreme Court and Ninth Circuit applying an objective standard to claims of pretrial detainees analogous to those that would be asserted by convicted prisoners under the Eighth Amendment, the court is comfortable concluding that an objective standard also applies here.

In applying the objective standard, the court must consider the following factors:

> (i) the defendant made an intentional decision with respect to the conditions under which plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Gordon*, 888 F.3d at 1125.

"With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily 'turn[ ] on the facts and circumstances of each particular case.'" *Id.* (quoting *Castro*, 833 F.3d at 1071). The "mere lack of due care by a state official does not deprive an individual of life, liberty, or property under the Fourteenth Amendment." *Id.* (citation and quotation marks omitted). "Thus, the plaintiff must 'prove more than negligence but less than subjective intent—something akin to reckless disregard." *Id.* (citation and quotation marks omitted).

**2. Analysis**

The parties did not apply the objective standard, but it seems the parties have set forth the universe of the facts relevant to this claim; therefore, it appears the court can nevertheless determine whether or not a genuine dispute of material fact exists utilizing the objective standard to conclude whether summary judgment is proper or not.

The first factor is whether Smith and Hagan made an intentional decision with respect to Plaintiff's conditions of confinement. Smith and Hagan admit in discovery responses that they detected an odor on June 22, 2017, that permeated the entire facility, and that it concerned them enough that one of them contacted their supervisor to ask if they could let the inmates sit outside of their cells because Hagan and Smith thought the inmates would have more air circulation if they were outside their cells and were trying to make the inmates more comfortable. They apparently went ahead with doing this, and said that some inmates decided to sit outside their cells and some did not. Hagan and Smith do not recall if Plaintiff was let out of his cell, but if he had asked for assistance it would have been provided. They also indicate they do not recall Plaintiff asking to be let out of his cell.

Plaintiff presents evidence that he was asleep for most of the day and was not let out of his cell because he was asleep. He claims that he asked Smith why he was not let out of his cell for relief like the other inmates, and Smith responded: "because you were asleep."

Viewing the evidence regarding this factor presents at most negligence on the part of the officers, but not reckless disregard. The officers obtained authority to let inmates sit out of their cells because they thought the circulation might be better. Smith and Hagen themselves were not affected by the odor and the inmates who chose to stay in their cells were not either. Neither can recall whether Plaintiff was let out of his cell or not. Under these circumstances, it does not

appear that the officers made an intentional decision to leave Plaintiff in his cell and be exposed to the odor.

The second factor is whether those conditions put Plaintiff at a substantial risk of suffering serious harm. Here, Defendants present evidence that some inmates accepted the offer to sit outside of their cells and some did not, and for those that did, they did not indicate that they felt sick from the odor. No other complaints or grievances were made about the odor, and no other inmate was seen in the infirmary with complaints of the odor. Smith and Hagen themselves were in the facility and did not feel sick from the odor. The evidence does not support a finding that Plaintiff faced a *substantial risk* of serious harm.

The third factor is whether Smith and Hagan did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved. Again, they did offer to let inmates sit outside of their cells where they might have better air circulation if they wanted.

The final factor is whether, by not taking such measures, Smith and Hagan caused Plaintiff's injuries. Smith and Hagan present evidence that they did not get sick that day and no other inmate complained about the fumes or went to the infirmary with complaints regarding the odor. They contend that Plaintiff was never diagnosed with being exposed to toxic fumes, and his symptoms could have been caused by heroin withdrawal. In any event, he was taken to the infirmary, evaluated and prescribed Tylenol, which he took for several days.

The court emphasizes the negligence is not sufficient under the objective standard for deliberate indifference to a substantial risk to a pretrial detainee's health or safety. If Plaintiff's version of events is believed, *at most*, Plaintiff has demonstrated negligence on the part of Smith

and Hagan in not waking him up and giving him the option to sit outside of his cell. Therefore, summary judgment should be granted in favor of Smith and Hagan.

## C. Equal Protection

The Fourteenth Amendment prohibits the denial of "the equal protection of the laws." U.S. Const. amend. XIV, § 1. It "commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001) (citation and quotation marks omitted); *Hartmann v. Cal. Dept. of Corr. and Rehab.*, 707 F.3d 1114, 1123 (9th Cir. 2013) (citation omitted).

"To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Furnace v. Sullivan*, 705 F.3d 1021, 2030 (9th Cir. 2013) (citation and quotation marks omitted). Where state action does not implicate a fundamental right or suspect classification, as is the case here, a plaintiff can establish a "'class of one' equal protection claim by demonstrating that [he] 'has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Squaw Valley Dev. Co. v. Goldberg*, 375 F.3d 936, 944 (9th Cir. 2004), *overruled on other grounds by Shanks v. Dressel*, 540 F.3d 1082, 1087 (9th Cir. 2008).

"A class of one plaintiff must show that the discriminatory treatment 'was intentionally directed just at him, as opposed … to being an accident or a random act.'" *North Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008) (quoting *Jackson v. Burke*, 256 F.3d 93, 96 (2d Cir. 2001)).

Again, Plaintiff alleges that Smith and Hagan violated his equal protection rights when they left Plaintiff in a cell heavy with toxic fumes while they released other similarly-situated inmates.

Defendants argue that they did not treat Plaintiff differently than other inmates with whom he was similarly situated. They state that Plaintiff slept the day away, but when he asked for help, an officer, nurse and Smith arrived and took him to the infirmary where he was treated; no one else got sick that day; therefore, he was not treated differently than other, similarly situated inmates.

The court finds that there is simply no evidence that Hagan and Smith *intentionally* treated Plaintiff differently than others. As was stated above, if Plaintiff's version of events is believed, then *at most*, Smith and Hagan were negligent in letting Plaintiff sleep while they gave other inmates the option to sit outside of their cells. This does not support a claim for equal protection which requires intentional conduct to treat another differently than similarly situated inmates. This is more akin to "an accident or random act" which does not establish liability for an Equal Protection Clause "class of one" claim.

Therefore, summary judgment should also be entered in favor of Smith and Hagan as to the equal protection claim.

## IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order **GRANTING** the Motion for Summary Judgment filed by Smith and Hagan (ECF No. 57), and entering judgment in their favor.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: June 24, 2019

_William G. Cobb_
William G. Cobb
United States Magistrate Judge

17