**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| DAVID HOWELL<br>aka ANDRE GILLIAM,<br><br>    Plaintiff<br><br>v.<br><br>SHERIFF CHUCK ALLEN, et. al.,<br><br>    Defendants | Case No.: 3:17-cv-00449-MMD-WGC<br><br>**Report & Recommendation of**<br>**United States Magistrate Judge**<br><br>Re: ECF No. 63 |

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is defendant Chuck Allen's Motion for Summary Judgment. (ECF Nos. 63, 63-1 to 63-5.) Plaintiff filed a response. (ECF No. 74.) Allen filed a reply. (ECF Nos. 78, 78-1 to 78-6.) The court has addressed the motion for summary judgment filed by defendants Sean Smith and Heather Hagan (ECF No. 57) in a separate report and recommendation.

After a thorough review, it is recommended that Allen's motion be granted.

## **I. BACKGROUND**

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (Compl., ECF No. 13.) The events giving rise to this action took place on June 22, 2017, while Plaintiff was housed at the Washoe County Detention Center (WCDC). (*Id.*) Defendants are Sheriff Chuck Allen and Deputies Sean Smith and Heather Hagan. (*See* ECF Nos. 13, 25, 29.)

Plaintiff alleges that while housed at WCDC on June 22, 2017, he was exposed to toxic gases and fumes. He contends that Sheriff Allen knew of the fumes from construction of the roof of the unit where Plaintiff was housed, but failed to take measures to ensure the fumes would not affect inmates. Plaintiff further alleges that after Smith and Hagan became aware of the fumes, they released about 30 similarly situated inmates to give them fresh air to breathe, but admitted that they kept Plaintiff in his cell rather than release him because he was sleeping. He avers that he became ill as a result of exposure to the fumes and had to be sent to the infirmary in a wheelchair. He was prescribed medication that he had to take twice a day for six or seven days.

As to Allen, on screening, Plaintiff was allowed to proceed with an Eighth Amendment deliberate indifference to safety claim in Count I based on allegations Allen knew of the roof construction and toxic materials being used, but took no steps to protect the inmates, including Plaintiff, from the fumes. (ECF No. 12.)

Allen moves for summary judgment on the basis that there is no evidence he knew know about the allegedly toxic materials used in the construction project that supposedly caused Plaintiff's injuries.

## II. SUMMARY JUDGMENT STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). In considering a motion for summary judgment, all reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On the other hand, where

reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

In evaluating whether or not summary judgment is appropriate, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine dispute as to a material fact; and (3) considering the evidence in light of the appropriate standard of proof. *See Anderson*, 477 U.S. at 248-50. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id*. at 248.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party cannot establish an element essential to that party's case on which that party will have the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute

be shown to require a jury or judge to resolve the parties' differing versions of truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Id*. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

At summary judgment, the court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine dispute of material fact for trial. *See Anderson*, 477 U.S. at 249. While the evidence of the nonmoving party is "to be believed, and all justifiable inferences are to be drawn in its favor," if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id*. at 249-50 (citations omitted).

### III. DISCUSSION

**A. Applicable Legal Standard for Deliberate Indifference to Safety Claim**

The court will first address what legal standard should apply to this claim. Plaintiff is currently incarcerated within NDOC, but on June 22, 2017, he was in the custody of the WCDC. (ECF No. 13 at 1.) On screening, the court stated in a footnote that Plaintiff was likely not a pretrial detainee during the relevant time at WCDC, but at WCDC while still in the custody of NDOC. (ECF No. 12 at 1 n. 1.) In addition, Plaintiff's deliberate indifference to safety claims were alleged under the Eighth Amendment. As such, the court analyzed Plaintiff's claims under

the Eighth Amendment for convicted prisoners which utilizes the deliberate indifference standard that applies both an objective and subjective component to analyzing the claim. (ECF No. 12.) Up until Defendants filed their motions for summary judgment, neither Plaintiff nor Defendants had filed anything with the court to correct the court's characterization of Plaintiff in the screening order as a convicted prisoner on June 22, 2017, and not a pretrial detainee.

Defendants' motion provides Plaintiff's deposition testimony where he confirms that he arrived at WCDC on May 23, 2017, for a parole violation and a new arrest for burglary and grand larceny. (This same evidence was also presented in the motion for summary judgment filed by Smith and Hagan.) It is an interesting question of what standard applies to a person who is housed in a jail for a parole violation, before the violation is adjudicated; however, the court need not decide that issue because Plaintiff was also at the WCDC on a new arrest for which he had not yet been tried, so he would still be considered a pretrial detainee at that time.

Allen's motion presents evidence that Plaintiff was a pretrial detainee, and then proceeds to apply the Eighth Amendment deliberate indifference standard. (ECF No. 63 at 3 at 12-14.) The court does not fault Allen for utilizing that standard, since that was applied both by Plaintiff in his complaint, and by the court in the screening order. With this new evidence that Plaintiff was a pretrial detainee, however, the court must consider what legal standard applies to a pretrial detainee's claim for deliberate indifference to his safety.

"Inmates who sue prison officials for injuries suffered while in custody may do so under the Eighth Amendments Cruel and Unusual Punishment Clause or, if not yet convicted, under the Fourth Amendment's Due Process Clause." *Castro v. County of Los Angeles*, 833 F.3d 1060, 1067-68 (9th Cir. 2016) (en banc), *cert. denied,* 137 S.Ct. 831 (Jan. 23, 2017) (citing *Bell v.*

*Wolfish*, 441 U.S. 520, 535 (1979) (holding that, under the Due Process Clause, a detainee may not be punished prior to conviction)).

The Eighth Amendment standard for deliberate indifference for convicted prisoners requires an objective and subjective showing. *Id*. First, the risk posed to the prisoner must be, objectively speaking, sufficiently serious. *Farmer v. Brennan*, 511 U.S. 825, 834 (citation omitted). Second, the prison official must subjectively "know of and disregard an excessive risk to inmate health or safety." *Id*. at 837. "In other words, the official must demonstrate a *subjective awareness* of the risk of harm." *Castro*, 833 F.3d at 1068 (internal citation and quotation marks omitted) (emphasis original).

The Ninth Circuit previously applied the Eighth Amendment's deliberate indifference standard to claims brought by pretrial detainees under the Fourteenth Amendment. *See id*. In *Kingsley v. Hendrickson*, 135 S.Ct. 2466 (2015), the Supreme Court held that the standard for an excessive force claim, analyzed under the Eighth Amendment for convicted prisoners, is governed by an objective inquiry for pretrial detainees.

In *Castro*, the Ninth Circuit held that a failure to protect claim, which is also analyzed under the Eighth Amendment for convicted prisoners, involves an objective inquiry when brought by a pretrial detainee. Then, in *Gordon v. County of Orange*, the Ninth Circuit concluded that "claims for violations of the right to adequate medical care" that are governed by the Eighth Amendment deliberate indifference standard when brought by a convicted prisoner, "must be evaluated under an objective deliberate indifference standard" under the Fourteenth Amendment when brought by a pretrial detainee. 888 F.3d 1118-1125 (9th Cir. 2018.)

Most recently, in *Oliver v. Baca*, the Ninth Circuit confirmed that a conditions of confinement claim that would be analyzed under the Eighth Amendment when asserted by a

convicted prisoner is governed by the Fourteenth Amendment when asserted by a pretrial detainee. 913 F.3d 852, 857-58 (9th Cir. 2019) (pretrial detainee's claim that his rights were violated when he was not provided a bed for three-and-a-half days at the jail had "a right against jail conditions or restrictions that amounted to punishment"; the court nevertheless relied on considerations espoused in Eighth Amendment cases involving convicted prisoners regarding temporarily restricting rights in the context of disturbances and lockdowns) (citation omitted).

The Ninth Circuit has not specifically addressed what standard applies in a case involving a claim for deliberate indifference to health or safety when brought by a pretrial detainee, but given the rulings of the Supreme Court and Ninth Circuit applying an objective standard to claims of pretrial detainees analogous to those that would be asserted by convicted prisoners under the Eighth Amendment, the court is comfortable concluding that an objective standard also applies here.

In applying the objective standard, the court must consider the following factors:

> (i) the defendant made an intentional decision with respect to the conditions under which plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Gordon*, 888 F.3d at 1125.

"With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily 'turn[ ] on the facts and circumstances of each particular case.'" *Id.* (quoting *Castro*, 833 F.3d at 1071). The "mere lack of due care by a state official does not deprive an individual of life, liberty, or property under the Fourteenth Amendment." *Id.* (citation and quotation marks omitted). "Thus, the plaintiff must 'prove more than negligence but

less than subjective intent—something akin to reckless disregard." *Id*. (citation and quotation marks omitted).

**B. Analysis**

The parties did not apply the objective standard, but have set forth all of the facts relevant to this narrow claim against Allen; therefore, the court can still determine whether or not a genuine dispute of material fact exists utilizing the objective standard in considering whether summary judgment is appropriate. As will be discussed below, the court finds that under either standard, Plaintiff fails to raise a genuine dispute of material fact so as to defeat Allen's motion for summary judgment.

Plaintiff's only claim against Allen is that Allen knew of hazardous and poisonous toxins being used for construction on the roof of the unit where Plaintiff was housed, and should have taken measures to ensure that toxins would not affect the inmates in custody of the WCDC, but he did not. (ECF No. 13 at 5.)

Allen argues that Plaintiff admitted that he has no evidence that Allen was at the WCDC the day he got sock; and that he has no evidence that Allen knew Plaintiff was or would be exposed to fumes. (citing E 4 at 3:1-4; Ex. 5 at 2:8-14.)

In discovery, Allen asked Plaintiff to produce documents that support Plaintiff's claim that Allen knew Plaintiff was or would be exposed to poisonous gas or fumes on June 22, 2017, as alleged in the complaint. (ECF No. 63-5 at 3, Allen's Request for Production of Documents (RFP) No. 3.) Plaintiff responded:

> Contrary to the Defendant's false-assertion, and clear effort to … manufacture allegations, (nowhere) in the Plaintiff's entire complaint is it alleged that Sheriff Allen knew that the Plaintiff was or would be, exposed to poisonous gas/fumes on or around June 22, 2017. The Plaintiff (only) alleged that the Defendant knew of the 'ominous-hazardous-toxins' being used for

8

> construction on the roof of unit Plaintiff was housed in. See Section C, Cause of Action, Count I of Complaint.

(ECF No. 63-5 at 3, Pl.'s response to Allen's RFP No. 3.)

In his deposition, Plaintiff was asked how he knew whether Allen knew about the materials used on the roofing project. (ECF No. 63-1 at 50, Pl. depo. trans., p. 49:19-23.) Plaintiff responded:

> just from common sense. And … I say that because any time construction work is being done, to the extent that I was told that it was being done, that you would have to conclude that toxic materials were being used. In addition to that because he's responsible for our health and welfare, I would think he would want to be informed of the materials being used prior to them being used.

(ECF No. 63-1, Pl. depo. trans. at pp. 49:24-25, 50:1-8.)

Plaintiff admits he never spoke with Allen. (ECF No. 63-4 at 3, Pl. responses to Request for Admissions (RFA) Nos. 5, 7, 8.) Plaintiff did not see Allen on or around June 22, 2017, and has no evidence Allen was at the WCDC on June 22, 2017. (ECF No. 63-4 at 3-4, Pl. responses to RFA No. 4, 9.) Allen contends that Plaintiff's speculation that Allen had to know about the materials being used is insufficient to overcome summary judgment.

In his response, Plaintiff states that on June 22, 2017, Chuck Allen was the sheriff and chief authority for the WCDC. (ECF No. 74 at 35.) On that date, Plaintiff claims that construction work utilizing toxic chemicals was conducted on the roof of Plaintiff's housing unit at the WCDC. (*Id*.) He further contends that toxic fumes from the toxic chemicals used for construction work disseminated throughout the unit, and as a result he became very ill and required emergency medical treatment. (*Id*.) He states that defendants Smith and Hagan confirm that toxic fumes from toxic chemicals used to perform the construction work permeated his cell,

9

which caused them to contact their supervisor and request authority to relieve inmates from the source of the fumes. (*Id*. at 36-37)

Plaintiff presents Allen's responses to discovery where Allen admits that it is his responsibility to protect the health and welfare, safety and security of the detainees and inmates in custody of the WCDC. (ECF No. 74 at 57, Allen's response to Pl.'s RFA No. 2.) Allen also admits that construction work was being done on the roof of Unit 6 at WCDC on June 22, 2017. (ECF No. 74 at 57, Allen response to Pl.'s RFA No. 3.)

There is no evidence that Allen's conduct violated Plaintiff's rights under the objective standard cited above (or for that matter under the Eighth Amendment's deliberate indifference standard). Again, Plaintiff's claim is premised on the fact that Allen knew that toxic materials were being used in the construction work on the roof of Plaintiff's unit putting the health and safety of the inmates at WCDC at risk. Allen puts forth evidence to demonstrate that Plaintiff has no evidence to support this claim.

Plaintiff's response is devoid of evidence to substantiate his claim. While Plaintiff presents his speculation that Allen had to know that toxic materials were being used in the construction project, there is no actual evidence to support this. While the court appreciates that it would have been a difficult task for Plaintiff to subpoena someone from the construction company performing the work about the materials used; whether they were "toxic"; and if so, whether this information was conveyed to Allen, Plaintiff did have the benefit of serving written discovery on Allen, and he did so. None of the responses Plaintiff provides to support his position corroborate his own conjecture that Allen knew that toxic materials were being used on the project.

There is simply no evidence that Allen made any intentional decision regarding the construction project and the materials utilized, such as allowing construction to proceed knowing that toxic materials were being used. In fact, there is not even any evidence that Allen had any involvement at all in the decision process with respect to construction materials or work. The fact that Allen knew construction work was going on that day is insufficient to show an intentional decision with respect to the use of allegedly toxic building materials that is required under the objective legal standard. Without evidence to create a genuine dispute of material fact as to this element of his claim, he cannot defeat Allen's motion for summary judgment.

The court notes that Plaintiff presents evidence regarding the actions of defendants Smith and Hagan and the medical treatment he received that date, but none of that goes to demonstrate a genuine issue of material fact with respect to his claim against *Allen*.

Even under the Eighth Amendment's standard which requires evidence that the defendant had subjective knowledge of the alleged risk and disregarded that risk, Plaintiff has not raised a genuine dispute of material fact. That is to say: Plaintiff has not produced evidence that Allen knew of and disregarded a serious risk to Plaintiff's health since there is no evidence Allen knew any toxic materials were being used in the project.

As a result, Allen's motion for summary judgment should be granted.

## IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order **GRANTING** Allen's Motion for Summary Judgment (ECF No. 63) and entering judgment in Allen's favor.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report

1 and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: June 24, 2019

_____
William G. Cobb
United States Magistrate Judge